**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**ZEAVON MONTREAL IRBY**                                                    **PLAINTIFF**

**V.**                        **CASE NO. 5:12CV00099 BSM/BD**

**DANIEL CANTWELL, et al.**                                                 **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.    Procedures for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail objections and "statement of necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## II. Introduction

Plaintiff Zeavon Montreal Irby, an inmate housed at the W.C. Dub Brassell Detention Center ("Detention Center"), filed this lawsuit pro se claiming that Defendants Daniel Cantwell and Lee Elkins ("Defendants) used excessive force against him.[1] Defendants have moved for summary judgment (Docket entry #23), and Mr. Irby has responded (#27). For the reasons set forth below, Defendants' motion should be granted.

## III. Discussion

### A. *Summary Judgment Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and, by depositions, affidavits, or otherwise, designate "specific facts showing

---

[1] Mr. Irby's claims against Defendant Adams and his claims against Defendants Cantwell and Elkins in their official capacities have already been dismissed, without prejudice. (#17)

that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322.

  B. *Factual Background*

  On January 19, 2012, Mr. Irby was incarcerated at the Detention Center. According to his complaint, Mr. Irby was in a cell with seven other men. He and several other inmates in his cell were up in the early morning hours of January 19th singing and beating on the windows. (#2 at p. 4) Defendant Cantwell, speaking over the intercom system at the facility, told the inmates to stop beating on the window. (#2 at p. 4) The inmates then started beating on the window frame, and Mr. Irby began tapping on the door with a pencil. (#2 at p. 4) Defendant Cantwell again told the inmates, over the intercom, not to beat on anything. (#2 at p. 4) The inmates initially complied but then began shouting derogatory comments at him.

  Defendant Cantwell states that after the inmates shouted the derogatory remarks, he opened the cell door and started his way toward the stairs, but that a detainee closed

the door behind him. (#24-1 at p. 3)  Defendant Cantwell then asked Defendant Elkins to come and open the door again so that he could talk to the detainees about the noise that was keeping the other detainees awake.  (#24-1 at p. 3)

While Defendant Cantwell was standing and talking to Mr. Irby, Mr. Irby came toward him and stood near his face talking loudly and acting aggressively.  (#24-1 at p. 3) In response, Defendant Cantwell pulled Mr. Irby out of the cell to talk to him.  (#24-1 at p. 3)  Then, Mr. Irby jumped toward Defendant Cantwell and became aggressive and combative.  (#24-1 at p. 3, #24-2 at p. 3)  Defendant Cantwell responded by shoving Mr. Irby in the chest with his hands open.  (#24-1 at p. 3, #24-2 at p. 3)

At that point, Defendant Elkins came up the stairs to restrain Mr. Irby.  (#24-2 at p. 3)  Mr. Irby resisted and became combative with Defendant Elkins.  (#24-2 at p. 3) Defendants Elkins and Cantwell gave Mr. Irby several direct orders to return to his cell. (#24-1 at pp3-4, #24-2 at p. 3)  When Mr. Irby refused to comply with their orders to return to his cell, Defendant Elkins pulled out his OC spray[2] and gave Mr. Irby a one-second burst to the face.  (#24-1 at p. 4, #24-2 at p. 4)

Mr. Irby offers the following abbreviated version of events in his verified complaint.  He states that after being told by Defendant Cantwell a second time to stop making noise, he went to use the restroom.  (#2 at p. 4)  He states that while he was

---

[2] "OC" is an abbreviation for Oleoresin Capsicum, a chemical agent that causes irritation to the eyes and throat.  OC spray is commonly known as pepper spray.

4

washing his hands, he overheard other inmates yelling derogatory remarks at Defendant Cantwell. (#2 at p. 4) Defendant Cantwell then "popped the door" and "Ms. Marsha" yelled for Defendant Elkins to pepper spray him; and Defendant Elkins then administered the pepper spray. (#2 at p. 4-5)

Mr. Irby was taken to the shower to decontaminate. He refused a shower but asked to talk to the shift leader. (#2 at p. 5, #24-1 at p. 4, #24-2 at p. 4)

    C.    *Excessive Force*

In his complaint, Mr. Irby claims that Defendant Cantwell used excessive force when he put his hands on him and pushed him and that Defendant Elkins used excessive force when he sprayed him with a one-second burst of chemical agent. (#2, #27)

Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline"; but they may not apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); see also *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Factors to consider in deciding whether a particular use of force was reasonable include whether there was an objective need for force, the relationship between the need and the degree of force used, the threat reasonably perceived by the correctional officers, efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Hudson*, 503 U.S. at 7; see also *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008).

Here, when Defendant Cantwell encountered Mr. Irby, Mr. Irby was aggressive, combative, and confrontational.  When Defendant Elkins arrived to assist, Mr. Irby continued to be aggressive and combative and could not be restrained.

Mr. Irby complains that he was pepper-sprayed in spite of the fact that he did not swing at or hit a guard.  In his response to the Defendants' motion, however, Mr. Irby does not deny that he was aggressive and combative towards Defendants Cantwell and Elkins or that he refused direct orders to return to his cell.  It was only after Mr. Irby failed to comply with these orders that Defendant Elkins used a minimal amount of non-deadly force.  See *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (pepper spray may be used if "the inmate's noncompliance ... poses a threat to other persons or to prison security"); see also *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that "a limited application of capstun to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force").

Following the use of the chemical agent, Mr. Irby was offered a shower to wash off the chemical agent, but he refused.  Mr. Irby has not alleged any injury resulting from the incident, and there is no evidence that he sought medical treatment.

In his response to Defendants' motion, Mr. Irby states that he might, at some point in the future, have a witness statement.  The promise of a witness statement, however, does not meet Mr. Irby's burden of going beyond the pleadings and showing that there is a genuine issue for trial.

After reviewing the *Hudson* factors, Mr. Irby's verified complaint, the reports of Defendants Cantwell and Elkins, and the reports of Deputy Brandon Batemon, Deputy Joyce Marshall, and Lieutenant Baker, the Court concludes that no reasonable juror could find in favor of Mr. Irby on his excessive force claim against Defendants Cantwell and Elkins. See *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that summary judgment is appropriate in an excessive force case when no reasonable jury could rule in favor of the plaintiff); *Wallingford v. Olson*, 592 F.3d 888, 892–93 (8th Cir. 2010) (same).

## IV. Conclusion

Accordingly, the Court recommends that Defendants' motion for summary judgment (#23) be GRANTED and that Mr. Irby's claims be DISMISSED, with prejudice.

DATED this 11th day of September, 2012.

_____
UNITED STATES MAGISTRATE JUDGE